We will hear argument first this morning in case 2828, the Federal Bureau of Investigation v. Fazaga. Mr. Kneedler. Mr. Chief Justice, and may it please the Court, the state secret's privilege is firmly grounded in the Constitution and the common law, and is critical to safeguarding the national security. The Ninth Circuit did not disagree with the District Court's conclusion that the information concerning the foreign intelligence investigation at issue here falls within that privilege. The Ninth Circuit instead held that Section 1806 F of FISA displaces the state secret's privilege and requires the District Court to adjudicate the merits of plaintiff's challenge using the very information that is covered by the privilege. That novel interpretation cannot be squared with the text, context, or purpose of Section 1806 F. That section's purpose is to provide a special mechanism for the suppression of evidence when the government seeks to use it against an aggrieved person in a judicial proceeding or other proceeding. The Ninth Circuit's first rationale was that the government uses information against the party when it invokes the state secret's privilege, but the government invokes the privilege to prevent the use of information, not to facilitate its use. Indeed, in this case, the government argued and the District Court agreed that because the information concerning the reasons, the subjects, the sources, and methods of this foreign intelligence investigation was so central to the case that the case that the First Amendment claimed had to be dismissed. The Ninth Circuit's other rationale was equally erroneous. It ruled that plaintiff's prayer for relief seeking an injunction requiring the FBI to destroy or return the information comes within 1806 F's reference to a motion or request to discover or obtain surveillance application orders and related materials. But that clause governs discovery in suppression motion. It likewise does not displace the privilege. At the very least, given the constitutional and deep common law roots of the state secret's privilege, section 1806 cannot be read to reflect the congressional intent that would be required to abrogate the privilege. Mr. Kneedler, do you place, a few times in your opening remarks, you argument that it's based in common law rather than inheres in the executive power? No, we think it's very strongly rooted in executive power. It's also friendly rooted in the common law. And the reflection of it being in the, as part of the executive power goes all the way back to the founding. Many of those early disputes were vis-a-vis Congress, not the courts, but the basic point of the need for the executive to protect information pertaining to the nation's security as being part of the presidential prerogative and the executive branch necessity goes all the way back to the founding. But it's also recognized for very good reasons, the same reasons really, as a matter of federal common law. One final question. The two cases, Totten and Reynolds, and argue that these two have separate doctrines with respect to executive powers or to state secrets. Do you think they're two separate doctrines or is it just one doctrine? We think at bottom that it's just one doctrine. The question of the proceeding, but then the next question is what happens if the evidence is excluded? And in that situation, as we argued here, where the evidence is so central, at least where the evidence is so central to the case, or its adjudication would risk disclosing information at the core of the case, the case should be dismissed. And in fact, this court's decision in Tenet versus Doe rejected the claim, the contention that the doctrine of Totten was simply a contract doctrine. The court said, in fact, Totten was not so limited. And the court quoting the famous passage from Totten said, public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential. And in Reynolds itself, while the court was dealing with the privilege, it pointed out that Totten was a particularly clear case, and it was not necessary even to get into the question of evidence because the case concerned the existence of a spy agreement that was central to the case. But I think the way the court referred to Totten indicates that that was an easy case that actually could be dismissed in the face of the complaint, because the face of the complaint was alleging the existence that was of a secret item that was protected by the national security. But if you get further along, maybe the face of the complaint doesn't say that. But as the government's declaration in this case demonstrated, the adjudication of the case, if it went forward, would concern the sources and methods, et cetera, of a foreign intelligence investigation such that a plaintiff's First Amendment challenge could not properly be adjudicated. Mr. Kneedler? Thank you. I'm sorry, Justice Stoneman. No, that's okay. Did you finish? Thank you. I'm a little confused. I thought the Ninth Circuit here basically only displaced the state secret's privilege with respect to the ability of the judge to determine whether, after reviewing the information that was necessary, that it thought necessary, that it then should determine whether the seizure was lawful or unlawful under 1806. I thought that there were separate writings basically saying that if, at that point, it found the seizure unlawful, that then it would consider disclosure only. I don't think it said it would disclose if the seizure was lawful. It said it would disclose only if it's unlawful. But I don't know where in any of our jurisprudence we've ever suggested that an in-camera review by a judge threatens national security. Our submission is not that when the government invokes the state secret's privilege that a court is altogether barred from looking at the in-camera submission by the government to explain why the information is privileged. But the Ninth Circuit went beyond that. It relied on 1806F to actually adjudicate the merits. It said the court should consider all of the constitutional challenges that the plaintiffs are bringing. I'm sorry. 1806 only permits, on its terms, a disclosure if the information is seized unlawfully. So I don't know where you would get that the court was trying to do anything else but determine that. And I think there were some of the majority who wrote separately and said if the court chooses to disclose then, but that's a big if, assuming that your seizure was unlawful, then it has to be disclosed. I guess my bottom line is you seem to be rendering 1810 a nullity by basically saying if I don't invoke 1806 by me, the government, by moving to it's a state secret, even if I seize these materials unlawfully, the petitioners have no claim under 1810. Is that what you're saying? Well, several things. 1810 does not apply to the government. 1810 is only a suit for damages. Exactly. So it cannot be the basis for a suit for an injunction. That's assuming we read 1806 the way you do. Yes. 1810 lets a person who's been surveilled unlawfully sue for actual damages, liquidated damages, punitive damages, and reasonable attorney's fees. Yes. So assume, as I must on the face of the complaint, that the plaintiffs might be able to prove without your information that they have standing because they've been unlawfully surveilled and they're suing for a violation of 1810, and you're claiming that they're not entitled to have the judge determine whether they've been surveilled unlawfully or not. There are two points about section 1806F. One is that it is simply a suppression mechanism, not a determination to- Why would we even reach that question? Well, because there's a threshold question, 1806F only applies- it's triggered by the government's intention or obvious purpose to use the information. No, sir. You say that the state secrets is not displaced by 1806F. If we agree with that, why would we reach that very naughty question, which in your brief you've asked us not to reach, of whether or not a claim under 1810 would permit the judge to look at the materials and say a seizure is unlawful or not? What we've suggested is not before the court is the question of dismissal as a remedy or as a privilege. The other arguments we're making go to the interpretation of 1806 itself in terms of when can it be invoked. In our view, it can be invoked only when the government affirmatively will use the information against an aggrieved party. How is that consistent? I mean, I think I understand the argument you made in this respect in your brief, but I'd like to hear it concisely. How is that consistent with the language that any aggrieved person can use the statute to discover or obtain applications or orders or other materials relating to the electronic surveillance? That sounds like the other aggrieved person is using 1806F. Yes, but we submit in response in the situation, just like in an ordinary suppression situation, if the government, and this is a statutory codification of what is at bottom, a regular suppression motion or procedure, when the government intends to introduce evidence obtained or derived from foreign intelligence surveillance, then the aggrieved party against whom the evidence would be used has an opportunity, just as in a normal suppression motion, to challenge the validity of the surveillance or other way in which the government obtained the evidence. So it has to be triggered first by the government's use of the information. And when you read all the preceding sections and F together, we think that's very clear. Subsection C requires the government to notify an aggrieved party when it intends to use information against him in a proceeding. E provides for a motion to suppress that. And then F is about how a suppression procedure would operate, whether it is the result of the government's notification or a motion under E or as a safeguard to make sure this procedure is exclusive. Any other way in which an aggrieved party might seek to challenge the government's of the information. And your reference to the language in F, what refers to a motion or request is made by an aggrieved party to discover or obtain applications or orders or other materials relating to the surveillance. That is all information. It's classic suppression. We want to see what went in to the warrant or what went into the application to the FISC. So it's about suppression, not about a general discovery. Well, why isn't it about both? I mean, a significant part of it is obviously about suppression, but there are also these references to discovery. And why shouldn't we understand this provision as doing both things, as codifying a suppression procedure and also codifying a discovery procedure? Because it may be that plaintiffs in a case like this one look to discover very sensitive materials, and Congress wanted a procedure in place to deal with those kinds of discovery requests. Well, in a civil case, if there is a discovery request and the information is covered by the privilege, the mechanism for dealing with that is the assertion of the state secret's privilege. There is no automatic right in a civil plaintiff to get discovery from the government vis-a-vis privilege, but where the government actually comes forward and says, we want to use this information against you. But you're just excising words from this statute. I mean, the statute is about discovering, obtaining, or suppressing evidence. Well, that's the F language, right? Suppressing, obtaining, or discovering, right? It just seems as though Congress wanted to do two things here. It said, we realize there are these very sensitive materials, and maybe the government will want to use them, and the person will say, oh, that's illegal. The government can't use them. That's one set of circumstances. The other set of circumstances is maybe a plaintiff wants access to those materials, and the government wants to say, no, you can't have them. And that's another way in which this statute says, here are the procedures you use when that occurs. I think that that phrasing has to be looked at in the context of all of the subsections dealing with the government's intent to use. And indeed, Section 1806 as a whole, 1806 is termed, is titled, Use of Information. Subsection A describes the uses to which the government may put the evidence. It can use it only in connection with minimization procedures. Subsection B says that it can't be turned over for law enforcement purposes without a reservation by the Attorney General. C through G deal with the government's use of the information against the party in a narrow situation, in a legal proceeding. Mr. Kneedler, I'm curious, in the list you gave the Chief Justice of the various subsections that you think support your position, you didn't list A, which talks about preserving privileges that otherwise exist. And I'm just curious why the government didn't invoke A. There must be a reason. No, I think A does cover that. Oh, so let's throw that in there, too. Okay, all right. Well, but I think- I just wondered if you had thought about it. Yeah, no, I think it also covers, like, attorney-client privilege of the person being surveilled. Okay, all right. I just wondered if you'd had a thought about it, and if you didn't, that's fine. I think that's a further confirmation of the- Okay, okay, I got it. Otherwise use, help me out with that. The language is, enter into evidence, disclose, or otherwise use. Why doesn't otherwise use cover this circumstance? Well, I think, again, I'm not sure if you're looking at subsection C or E, but subsection C says whenever the government intends to enter into evidence or otherwise use or disclose. So it has to be a circumstance, it seems to me, where the government isn't putting the evidence on, and it isn't disclosing it to the other side, but it's making use of the evidence in some other fashion. And here, I think there's a pretty good argument on the other side, that the government is using it as a means to dismiss the case without disclosing it. And it is the existence of this secret evidence that will neither be put in evidence nor disclosed that is the basis for the dismissal under Reynolds and Totten in the government's view. Why doesn't that fit perfectly? The language, enter into evidence or otherwise use or disclose, is intended, as we understand it, to be a comprehensive description of any way in which the evidence might... But it isn't, because you've got otherwise use. So it can't be that enter into evidence and disclosure are comprehensive. By definition, Congress says they aren't, and that there's another way to use this evidence that doesn't involve its disclosure. Well, use could also... I mean, enter into evidence suggests a formal proceeding, either a judicial proceeding or maybe a formal... I think we have a pretty formal proceeding here, Mr. Kneeler, don't you? Yeah, no, but I think you were looking... I understood you to be looking for an explanation for the word use. And the explanation I'm giving is that when you don't have a formal proceeding where you have rules of evidence introducing something into evidence, something received in evidence, but an informal adjudication before an agency that does not have that sort of system, we might use it... Mr. Kneeler, we're talking about otherwise use in court. And clearly, because we've got disclosure and entry into evidence, those things happen in court. Why couldn't it be, again, that otherwise use might include when the government cites the existence of secret evidence it's not willing to disclose or put in evidence as a basis for dismissal of the lawsuit? That's using the evidence as an offensive weapon. Well, again, we think when the government invokes the state secrets privilege, it is invoking it to keep it out of the case. It's not... What the language is, is to use against the person in the proceeding. But assertion of the state secrets privilege successfully keeps it out of the proceeding. Can I follow up on Justice Gorsuch's question? I guess I had understood, and maybe I'm misunderstanding, your position to be that in 1806C intends to enter into evidence or otherwise use or disclose that it's not simply in a trial, but it's to otherwise use or disclose it in a trial hearing or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States. I'd understood you to be saying, well, in all of those situations, you might not be introducing into evidence, but you might be using the evidence, bringing it before a regulatory body in some way that's not a proceeding? Or am I misunderstanding? No, that's precisely our explanation. I'm sorry. Sorry. Go ahead. No, I was going to say one other clue to this is the very same phrase, intends to enter into evidence or otherwise use or disclose in C is used in E, which says any person against whom evidence obtained, et cetera, will be introduced or otherwise use or disclose may file a motion to suppress. So I think that links C's language about use to the motion to again, E uses the very same language. And then F is about the procedures for suppression. And G then says, if the government, if the district court determines that the surveillance was not lawful, it shall in accordance with the requirements of law, suppress the evidence, which was unlawfully obtained or otherwise grant the motion and otherwise grant the motion was intended to leave open the question of whether this court's decision in Alderman would apply under FISA. So it all hangs together. And this would be a surprising way in which the government, excuse me, in which court Congress would override, abrogate the state secrets privilege in a sentence about discovery in the middle of five subsections of this statute, dealing pretty clearly with the suppression of evidence. And even when you look at 1806 F itself, it, it, it talks about discover or obtain applications or orders or other materials relating to the electronic surveillance. It's not, it's not talking about evidence about the plaintiff's claim generally, it's focused specifically on the things dealing with the electronic surveillance. It seems to me, Mr. Kneedler, you have at least one textual argument regarding the language in subsection F and that is whether the prayer for relief constitutes a motion or request. But putting that aside, do you have any other arguments about the literal meaning of the language in subsection F on which the respondents rely? And if you don't, what are the structural features that you rely on? I understand your argument to be based mostly on structure and not on the literal language of, of subsection F. So two parts to that. Any other strictly textual arguments and if not, which structural arguments are you relying on or which anomalies would result if their interpretation were adopted? Well, there are, I think, very important textual arguments in the pertinent phrase, which actually has two parts, but it says discover or obtain. And discover could, again, tie into formal court proceedings where, where you might file a discovery motion, but, but outside of formal proceedings, if you want to obtain, excuse me, obtain the evidence effectively in the same way you would through discovery. But the point is literally they want to obtain this information, do they not? No, what, what their prayer for relief seeks is, is actually expungement of it, not, not to receive it. I thought they made it very plain that they'd be very happy to get the documents back, which I think would be to obtain them. Right, but, but if, yes, but that doesn't, I think, really tie in with, with what they, what their complaint was. But the more fundamental point is 1810 does not provide for injunctive actions against the United States, and the Privacy Act does not provide for expungement. But the structural point we think is also very important. As I mentioned here, the, the entirety of 1806 is addressed to the government's use of information derived from foreign intelligence surveillance. That's the title. A talks about use with minimization. B talks about when it's going to be furnished for law enforcement purposes. All of these other provisions that we're discussing go to when the government tries to use it in... Okay, I've got that point. This is, they are taking some language out of this and interpreting it to mean something that is quite different from most of what is addressed in 1806. I've got that. Any other structural features that you rely on? Well, the language, the structural, but the language in C and, excuse me, C and E that I referred to, which ties otherwise use to suppression, and then F being an implementation of the, of the method for suppression, and on, on G, which talks about grant, suppress the evidence or otherwise grant the motion. It's the same motion to exclude the evidence from the proceeding. The court can either suppress it, or I think Congress hoped do something else besides, besides turning over all the information to the defendant as part of the suppression. That's, but, but G talks about suppression of evidence, not, not obtaining it. Thank you, Mr. Kneedler. Justice Thomas, anything further? Mr. Kneedler, you were, just one brief thing. You were in the process when you were discussing subsection C, the, it's 1806C. You, the phrase against an aggrieved person, you were about to tell us what you thought of that before you got distracted. I think that's very important, because it, it, it shows that it, it has to be triggered by something that the government is doing before you even get into this procedure. And, and that's why the word suppress is very important. If the government intends to use the information against somebody, you can move to suppress it, or if it's in a more informal proceeding, you move to have it excluded or don't consider it, or whatever it's, whatever its equivalent is. Now, there may be some civil proceedings where, where the evidence, you know, maybe there's an argument it shouldn't even be suppressed, but, but again, it's all, in 1978, it was all directed toward suppression where the privilege keeps it out of the proceeding. Thank you. Justice Breyer. Well, I assume you're right, that it, you know, this particular statute doesn't displace the state secret doctrine. Still, there are many situations in different kinds in which it might arise. This is an unusual one. A plaintiff sues government officials and says, you have unlawfully been wiretapping or surveying, whatever, okay. The government goes back and says, Judge, we have a good reason for doing that wiretapping. And we don't want to tell people what it is. Doesn't the judge, shouldn't he still look to see if they're right? I mean, one, maybe they don't. Two, maybe it isn't that important. Three, maybe how they got it, legally or illegal, has something to do with whether, and E, maybe there are different ways in which you could disclose some but not all. I mean, wouldn't that be generally true, whether this applies or it doesn't apply? What you're describing, I think, is the normal administration of state secrets privilege. If the government invokes it, yes, that we're saying the court can look at it, but it can't use it as a vehicle to decide the merits of the case. Why not? If, well, that's Justice Scalia's opinion. I mean, I don't know. We have a motion to dismiss. And all we have is that. And before we decide whether the case should have been the district judge and perhaps the Court of Appeals, and for all I know, maybe us, have to look at this information. We are not saying that in the normal state secrets case, the court, if necessary, can't look at it. Okay, then why don't we just say this? Say this case needs to be dismissed. And it doesn't displace. This 18-0 doesn't displace anything that's relevant here. But we should send it back. And the Ninth Circuit was wrong. And the district court, and maybe the circuit too, should go and look at the information, if they deem that necessary in terms of the relevance to the case, and decide its relevance, how it was obtained, da-da-da-da-da-da-da. And then someone can move, like the government. Hey, keep this out. Dismiss the case. The district court already did that. The government moved to... And did the Ninth Circuit. The Ninth Circuit did not reach the dismissal question. No. So maybe they should go back and say, well, given the nature of this information and how it was obtained, we will review whether the district court was right to dismiss it. Maybe we send it back to the district court. A lot of things. But I mean, my point is there should be a way to look at the information for the court and decide what to do, not whether this particular statute applies or not. I don't know. Yeah. We don't think this statute in this... And that's the end of the case. All we have to do is say that you're happy. I mean, that's what we think the proper disposition is. Reject the court of appeals' erroneous view of 18-0-6-F and that it displaces the state secret's privilege, and have it go back to the Ninth Circuit to review the district court's determination that the evidence was covered by the privilege, which Respondent did not challenge below, and then whether dismissal is necessary, because the evidence is so central to the case. Justice Alito, anything further? Justice Sotomayor? Let me answer my question directly. 18-10 gives any person who's been unlawfully surveilled the right to seek damages, punitive and otherwise, and attorney's fees. If I'm hearing your arguments, you say that if a party has standing, and very few have standing, because very few people know they've been surveilled in the way these plaintiffs do. I've had research done, and the only plaintiffs that have standing that I've found where a court has found standing to bring an 18-10 claim is the Fourth Circuit case. So, I think what you're saying to me is, if these plaintiffs who appear to have reasonable grounds to believe they were surveilled, so they have standing, that they can't proceed if you claim state secrets. They can't have a judge look at this evidence to determine whether it was lawful or unlawful, because you say if the judge says it's unlawful, and I don't know how, because if the judge says it's unlawful, how are you injured? All they have to do after that is prove their damages. You'll have no defense once they've proven... First of all, we don't believe that they have established a grieve party status. Whether to what extent or against whom electronic surveillance was used has not been disclosed. My bottom line is, you're saying a person who's been unlawfully surveilled, if the government claims secret, doesn't have recovery under 18-10. Unless it could be proved in some other way. They have proved it some other way. Well, you could have other disclosures of surveillance, maybe in a criminal prosecution, or in some other way. There was testimony by the informant here in a criminal proceeding that disclosed some information that could have been the basis for an 18-10 proceeding. But our bottom line is, 18-10 says nothing about the state secrets privilege. But answer my question. Once you claim state secret, you say there's no way to look at the information to determine whether it was unlawfully obtained? If the requisites for dismissal are satisfied, which means the court agreeing that the information is privileged and that the case cannot proceed because the information is so central. But there's nothing in 18-10 that suggests a displacement of the state secrets privilege. And yes, if all those requisites were shown, then yes, the case would not go forward. Justice Kagan? I'm going to follow up on Justice Breyer's question, and I'm not sure I understood the government's position. Is the government's position now that it would be wrong to dismiss on the pleadings without any further inquiry into the nature of the materials and how they affect the lawsuit? No. I mean, the government invoked the state secrets privilege. The district court found it was privileged. The government argued that, therefore, the First Amendment claim needs to be dismissed because that claim is that this foreign intelligence surveillance investigation was actually based solely on their First Amendment rights. And to defend against that, it would be necessary to look at the sources, methods, et cetera, of that. Yes. I mean, I think what Justice Breyer was suggesting is in a case like this, I mean, maybe dismissal would be the only appropriate remedy for the problem, but maybe not. It depends. And it depends on some investigation of the materials and how they figure in the case and what harms they present and so forth. And the Ninth Circuit seems to have misunderstood that point. Maybe you contest that point. But the Ninth Circuit seems to say in a kind of old-fashioned, Totten-like way, the government says state secrets and we just have to dismiss it in the ordinary case, putting aside the statute. And I thought we made clear in General Dynamics that that's only true in a small category of cases where the subject matter of the lawsuit itself revealed a state secret. But that in cases like this, in cases like this, it's an evidentiary privilege. And first we're going to decide what kind of evidence should be excluded. And then we're going to decide based on the full evidence of the case whether the suit can go forward or not, in all fairness to the parties. And that's what it seems the Ninth Circuit didn't understand. And maybe you contest, but I'm not sure you did. Well, no, I think the Ninth Circuit did get confused. But I want to make the point that the District Court already did what you're describing. The government invoked the state secrets privilege. The District Court held and the respondents in the Ninth Circuit did not disagree that all the information about the investigation was privileged. The District Court then proceeded to say, can this court, can this case properly go forward without that information, and said no, both because that's the very central fact of the case, what was the basis or reason for the investigation. And that can't be adjudicated without delving into that information or at the very least a risk disclosure of that. Therefore, that First Amendment claim should be dismissed. And that should have been affirmed in our Ninth Circuit. But they didn't reach that question because they went through this other process of saying 1806 F displaces the state secrets privilege. Therefore, there's no basis for dismissal under the state secrets privilege, at least as of now. So we think it should go back where we think the Ninth Circuit should affirm the District Court's dismissal. But you think it should affirm, but you're saying the Ninth Circuit should reach that question and should decide that question as to whether all of those conclusions about whether the nature of the evidence required dismissal was correct. Yes. Justice Gorsuch? I'd like to come at that same question from a different angle. Here's where I'm stuck, Mr. Kneedler. Reynolds told us in General Dynamics reaffirmed that the state secret privilege allows the government to keep evidence away from a party, but that generally the party is free to prove its case using other evidence. And so the government's really the choice. Does it want to disclose the evidence and defend itself? Or does it want to let a judgment, a tort judgment go ahead against it and keep national security safe? Okay. And FISA was enacted against that backdrop. And if I were pressed, I would say FISA is perfectly consistent with that understanding of state secrets. The problem is that now the government takes a very much stronger view of what state secrets doctrine is, and it imports a lot of the Totten stuff into it and says, anytime we have a secret, we're entitled to use that evidence in our possession without telling you anything about it as a basis for dismissing the suit, more or less as a matter of routine. And instead of being put to the choice of accepting a tort judgment, but keeping a secret, it now gets both. It gets to reject the tort judgment and keep the secret. And in a world in which the national security state is growing larger every day, that's quite a power. And it seems like the Ninth Circuit operated on this understanding of the state secrets doctrine, which might be inconsistent with FISA. I think probably is inconsistent with FISA. And then we have to ask the question of which displaces. But that question only arises if we accept the mistaken view of the state secrets doctrine. And so I think your friends on the other side have made this point and suggested, why don't we just address the state secrets problem and say the Ninth Circuit misunderstood state secrets doctrine and reverse ferment on that basis. And then we don't have to get into this question of a conflict, which only arises on a mistaken understanding of state secrets doctrine. What say you to that? The Ninth Circuit did not reach the dismissal issue. I understand that. And with respect to their argument about 1806 F displacing, in their view, it displaces the state secrets privilege with respect to the exclusion of the evidence also, not just to the dismissal remedy. And we think that is that that is clearly wrong. And why would this be an alternative basis for affirmance and for finding for the response? Because it would change the judgment. The Ninth Circuit's judgment contemplated, I mean, in two ways. Well, the opinion contemplated that if it assumed with, frankly, I think maybe no basis to assume. But anyway, that the entire case would be wrapped up in terms of whether there was electronic surveillance, which that's clearly wrong. So why not just say that and send it back? And we don't have to get into this question about whether FISA displaces state secrets, which begs the question of what state secrets is. No, I think it's the other way around. With all respect, Justice Gorsuch, this is a case in which the Ninth Circuit relied on a statutory holding, which could have ramifications much more much broader than this. But the point about the court deciding that it would require an alteration of the judgment because the Ninth Circuit contemplated that in proceedings on remand, the state secrets privilege could be invoked and maybe even the dismissal remedy would be available in the Court of Appeals view on remand. So it's not properly before this court without a cross petition. Justice Kavanaugh? Yeah, I have several questions, Mr. Kneedler. First, I just want to make sure with respect to Justice Gorsuch, is it your view that that issue is before us? I don't think it is before you. I mean, it has been advanced as an alternative ground for affirmance, but I think it would require an alteration of the judgment. But in any way, in any event, it does seem to us that the statutory question is antecedent the way the court looked at it. And if the court was wrong, then it should reach the question of dismissal. And I would think this court would want the Ninth Circuit's view of looking at the evidence, is this a case where dismissal might be appropriate before it entered into the question of how and when dismissal can follow a successful indication. You said this, but I just want to nail it down. The district court looked at the evidence, concluded that the state secrets privilege applied and dismissed. When we send it back to the Ninth Circuit, they will be able to review that. Yes, that evidence is in the record. It's available to this court. Classified declaration that was presented to the Attorney General Holder when he invoked or asserted the state secrets privilege. So that was your answer to Justice Breyer and Justice Kagan, I think. Yes. Okay. And then picking up on Justice Thomas's first question, back to the statutory issue, he referred to the constitutional status of the state secrets privilege. And I think, I'm curious how that plays into our statutory interpretation. I think you said at one point, we shouldn't expect Congress to do a drive-by incursion on the state secrets privilege through this kind of language. But how does the potential constitutional backdrop of the state secrets privilege play in? I think the court should insist upon some sort of clear statement or clear indication that Congress intended to abrogate a privilege that is, in our view, critical to the President's exercise of his Article II powers. And so there is, I think, a strong presumption against reading a phrase buried in a statute clearly otherwise dealing with suppression of evidence and a statute that is protective of the government's interests and protective of the national security to read it to abrogate a privilege and a disposition of a case that would undermine that. Because there would be a major Article II issue if Congress tried to do that, but we don't need to get into that. Is that? That's correct. And the same thing would be true about a statute that is said to be in derogation of the common law. You wouldn't naturally read a statute to overcome that. Last question. The search claims are still alive regardless of what we're talking about here, right? We're talking about the religious claims. The district court dismissed the Fourth Amendment claims. We did not seek that. So on appeal, it's the religion claims because that goes to the and the government decided that at this point, it was not going to assert the state secrets privilege over the Fourth Amendment claims. But down the road, it might if they can't be disposed of on another basis. So are they still alive in the district court then? The search claims? Well, not the way the district court disposed of it, but the Ninth Circuit said it was wrong for the district court to do that. So if this case goes back, the Ninth Circuit presumably would reach the same conclusion. Would the government oppose the search claims continuing? No, I think that was our position on appeal. I'm standing here. I can't think of a reason why, but I, you know, I'm not biding you for all time. I just want to make sure. Thank you. Justice Barrett? Mr. Kneedler, do you concede that 1806F could apply in a suit brought against the government? Maybe under 1810, maybe under something else? 1810 could not be brought against the government. I'm sorry. Yeah, only damages. But if the government intended to introduce or use the evidence in that case against the civil plaintiff, it could be used, yes. But it's not a free-floating discovery device. No, I understand it's not a free-floating discovery device. I'm just, I understand your position that it's, you know, when the government wants to use or introduce evidence, that it applies then. But the government may seek to do that even if, even if it's not a criminal prosecution, for example, that the government has brought. Yes, if the government, or if a plaintiff brings a suit against the government and the government intends to use the information, then 1806F would be available. So you're not taking the position that Judge Bumate took in the Ninth Circuit, where he seemed to view it more as confined to that circumstance? Yeah, no, we think it applies irrespective of who brought the proceeding. It's the use, interaction, evidence use, et cetera, against the person. So the against is what triggers it. Thank you. Thank you, Mr. Kneedler. Ms. Carroll? Thank you, Mr. Chief Justice, and may it please the Court. I'd like to make two points. First, Section 1806F provides only a narrow mechanism for deciding the admissibility and discoverability of surveillance materials. It does not speak at all to the fact that the government's assertion of the state secret's privilege deprives the individual defendants of a valid defense, a defense that depends not on the surveillance evidence that would be at issue in a FISA proceeding, but on the privileged information about the targets, predicates, and scope of the investigation. Second, adjudicating the individual defendant's liability in camera and ex parte with no jury and no right to participate would violate the Seventh Amendment and Due Process Clause. Even if the Court of Appeals' interpretations were plausible, FISA does not compel it, and this Court should reject a reading that argues that FISA does not displace the privilege. I think that that resolves the question, because that was the holding of the Ninth Circuit. The Ninth Circuit instructed the district court to decide in camera and ex parte whether the defendants violated the constitutional and avoidance argument. Correct. These are constitutional issues that would arise if the Court of Appeals' interpretation of FISA were accepted, and I think it's largely undisputed that under the Court of Appeals' reading, you would have an in camera ex parte adjudication, not just of the lawfulness of the surveillance under FISA, but of the ultimate liability on the First Amendment and equal protection claims. And I think it's undisputed that that would violate the individual defendant's jury trial rights and due process rights. Now, Mr. Kneedler, I think, has made some good points that we agree with about the language of 1806F regarding what a use is and what a covered motion or request is, but I think there's just a the FISA, both 1806F and, frankly, an 1810 claim, are completely orthogonal to what is at issue in the First Amendment and equal protection claims and the defenses that are necessary to those claims. As has been discussed, the result of an 1806F procedure is limited to suppression or to the aggrieved party of the application materials and court orders. None of that enables revelation of, or certainly not disclosure to my clients, or the ability to adjudicate the merits and defenses of the religious discrimination claims, which, as I said, don't turn on the surveillance evidence. They turn on who was or was not a target of investigation, why were they under investigation, what were the motivations and predicates, and what was the degree of fit between the methods used and legitimate counterterrorism goals, what were my clients' individual motivations. Those are all classic jury questions. They are questions that are completely subject to the privilege, as Judge Carney found, and they cannot come out, even in a limited FISA proceeding, even if we thought that 1806 was available. So I think that that's kind of a broader reason why the statute as a whole can't be read to displace the privilege. The privilege here, as Mr. Riesler indicated, was properly asserted, and the Court of Appeals did not dispute that. In making that determination, the district court, and he says, he paid especially close attention to the classified materials, which the district court described as providing comprehensive and detailed information informing the court as to the sensitive and privileged facts, and Judge Carney concluded from that classified material that it provided essential evidence to showing, quote, that the purported dragnet investigations were not indiscriminate schemes to target Muslims, but were properly predicated and focused. That is the information that the individual defendants need to be able to defend themselves, and this court recognized in general dynamics, as the lower courts have uniformly recognized, that it would be manifestly unfair to allow claims to go on in that situation where the government's assertion of the privilege prevents an individual capacity defendant from putting forward a defense that depends on that privileged information, which again, even if there were some reading of FISA that would allow a limited proceeding in camera to determine the lawfulness of the proceeding under FISA, that has nothing to do with the privileged information and is not a mechanism for bringing it out or allowing my clients to rely on it. Just a couple of quick points on the text of 1806F. Justice Gorsuch, you asked what could the phrase otherwise use mean if we're not talking about entry into evidence, and I agree with Mr. Needler that that language certainly covers use of information in a proceeding outside of a court, but even in court, as Your Honor knows, there are many ways to use information without entering into evidence. I think in this context with surveillance information, the most likely use would be to impeach a witness, but there are other ways. Counsel on that, you'd agree though that there aren't many ways to use evidence in court without either entering it into evidence or disclosing it, impeachment being a good example of disclosing it. Impeachment I think is also a use because you're not disclosing it. It involves disclosure, right? Can you think of another example? Refreshing a witness's recollection. Can you think of another example? Refreshing recollection, that's a good one. Others? I think also in a summary judgment proceeding, the language of Rule 56 indicates that when you use information in support of a summary judgment motion, it is not officially being entered into evidence. It has to be in form that could be for Mr. Kneedler and I guess for you is, can you think of another use in court that doesn't involve disclosure or entry into evidence? Each of the examples you've given me involves at least disclosure. I'm not actually sure that you do disclose to the jury when you're refreshing a witness's recollection. You're disclosing it to the witness, right? You're disclosing it to the witness, that is true, and if it's something that would help them to remember their recollection, but I think again that also brings in the fact that we could be talking about proceedings that aren't subject to the rules of evidence as well. And I think again, thinking back to the broader question, even if the court thought it were plausible to read that language more capaciously, a reading of Section 1806F that would allow, as the Court of Appeals thought, adjudication not just of whether the privilege was properly asserted, not just of whether the size of surveillance was lawfully authorized and conducted, but whether the individual defendants are liable for damages on constitutional claims. To have that adjudication conducted without a jury in an ex parte procedure in which they have no apparent right to participate would plainly raise grave and I think equally and we think more plausible interpretation of the statute. So we think the Ninth Circuit was clearly wrong to hold that the privilege was displaced by FISA. It should, as Mr. Needler has suggested, instead have affirmed on the ground that Judge Carney relied on, given that the classified information indicated, as the district court put it, the classified information gives defendants a valid defense that is no longer available because of the assertion of the privilege. Counsel, why is it that the government's reading helps you? I thought the essence of your claim is that an ex parte review hurts your client because it doesn't give your client an opportunity to be a part of it, as the Seventh Amendment, correct? That's correct. So why does it matter if the government is the one that's moving to use the evidence? Why wouldn't your agents be suffering the same deprivation? I think it would be, and I think that relates to the broader point I was making, that even if 1806 F is invoked, regardless of how you think it could be invoked, it doesn't get to the real problem in this case, which is the unavailability of the privileged information. To Your Honor's point, the constitutional claims we've mentioned under the Seventh Amendment and the Due Process Clause are violations that would arise from the court of appeals, may I finish my response? Yes. From the court of appeals interpretation. And under the avoidance canon, where this court has before it two plausible interpretations of the statute, the avoidance canon calls for rejecting the interpretation that would raise those grave questions. And we think the government's interpretation, as recently adopted as well by the Fourth Circuit, is certainly plausible, and that the Ninth Circuit's interpretation is certainly not more than plausible. And so the avoidance canon would come into play there. Thank you, Ms. Carroll. Justice Thomas? Justice Gorsuch, anything further? Justice Barrett? Okay. Thank you, counsel. Mr. Aubrey Londington? Thank you, Mr. Chief Justice, and may it please the court. Defendants do not seek just to exclude secret information from this case. If that were true, there would have been no need for them to file a motion to dismiss our religion claims. Instead, what they seek is not just to exclude information, but also to dismiss it. And to be clear, as we've said repeatedly below, we will not seek discovery on the religion claims. We're prepared to proceed just on our own evidence. So this case is entirely about dismissal based on their need to use secret information to defend themselves. Now, we recognize they have a legitimate interest in defending themselves, but neither Congress nor the common law permit dismissal on that basis. Congress struck a balance. FISA permits them to defend the suit using information that we will never see. But as Justice Sotomayor had suggested earlier, it requires the court to review the camera to determine if the surveillance was lawful. Section 1806, as Justice Gorsuch has already mentioned, applies not just when they seek to enter secret information into evidence, but also when they otherwise use it. Use is very broad. It means to put into service, and otherwise use means, as Justice Gorsuch has been saying, in a different manner. So there has to be a way different from just using or disclosing that's also covered by the statute. Relying on information to win dismissal of a lawsuit is obviously using that information. The government is also wrong on the common law. As General Dynamics explained, the Reynolds privilege is a privilege. The privilege information is excluded, but the case goes on without it. And in 150 years of case law, on which Reynolds relies in both U.S. and England, they can't point to a single case where plaintiffs could make their case without privilege information and get still the court-ordered dismissal. Like the widows in Reynolds itself, we are entitled to that opportunity, whether under FISA's rules or under the common law. Lastly, I want to emphasize, again, Your Honors, that the Court of Appeals did not hold that we can ever see privileged evidence. If the district court orders disclosure to us, the government can reassert the privilege. Our counsel, can you give me an example of a case where used was employed the way you are suggesting? Yes, Your Honor. In the firearms context, this court has done it even without the word otherwise. Actually, so the court has said, for example, in Bailey v. United States, that just referring to a gun in the course of a criminal transaction is using it. I think also that statute, again, is only use. We have otherwise use. So I think ours is even more broad than the one that the examples that the government uses or Judge Bumate's. Sticking on the same point, if I may, Your Honor, it is conceivable, I suppose, that there might be some other use you could come up with, although I don't think I've heard one yet that is not disclosure or enter into evidence. But that's not really the question, right? The question is when you refer to a document in your motion and say we win and the other side loses their religion claims because of those documents, is that also a use of it? And it just seems perfectly clear that that must be true. But it seems counterintuitive that you would say you use it by excluding it. Yes, Your Honor. And this goes to Justice Gorsuch's point also the relationship between the common law and FISA. If they were only seeking to exclude it, if they said we will keep it in our vault and then let the chips fall where they may, I don't think that would be a use. But when they then go further and say we don't just want the common law traditional rule, we want to now dismiss the religion claims, even though you can make your case with your own evidence, that transforms it from just keeping it excluded into an affirmative use. They're using it to effectuate the dismissal of the religion claim. So at that point, it becomes a use. And that's why I think it's also relevant that the Ninth Circuit, the decision below, they said they only are finding it displaced with respect to the dismissal remedy. And that's, I think, important because it's when they move to dismiss that it becomes a use and isn't merely exclusion of the information at issue. Well, you just said the information at issue. And what they're using, it seems to me, is the privilege. They're not using the information. The whole point of the statutory provision in 1806 is to keep the information from being used. I think it makes more sense to talk about using the privilege as opposed to the counterintuitive reading, at least, I guess this is their argument, which is that this is to, this proceeding, is to prevent the use as opposed to using it. Maybe a consequence of it is that the privilege is established, and then that means the information can't be used. But I don't see how the not allowing the information to be introduced is using the information. I don't disagree with Your Honor there. I think if all they were doing was trying to keep it out and nothing else, that would not be a use. And I think it's because they argue that the state secret's privilege actually authorizes dismissal, unlike every other privilege, even when the plaintiffs can move forward without the privileged information. That's why it becomes a use. But to go back to the beginning of your question, Mr. Chief Justice, I think to say that they're using the privilege and not using the information is a little odd. I think they are using the privilege, but the motion makes no sense without the references to the secret information, without the submission of actually two classified declarations and a classified memorandum. So they're using both. And I think that is the most natural meaning of the word otherwise used. I really can't imagine how their motion would make any sense if it didn't refer to the information. And once they're referring to it, again, not just to keep it out, but also to win dismissal of the religion claims, that's what makes it into a use. Could they win dismissal by invoking a privilege if there were no evidence to support the invocation of the privilege? Yeah, and we struggled around and could not think of a context in which that would arise. It seems like they have to, in order to win, say it's not just the fact that we're excluding the information. It's also now that the evidence, even though it's out of the case, is actually not out of the case. And it's doing some kind of work to come and dismiss claims, even though the plaintiffs say that they can make their case without it. But it would be a perfectly natural argument to say we think because of the national security basis, this information cannot be used. That's how you'd say before the judge. And then the judge is supposed to say, well, you're using it, so you lose. Again, Your Honor, I really think if that's all they were saying, if they were saying because of the national security implications, this then they would have filed a motion in limine. They wouldn't have filed it just in response to the complaint. They would have waited for us to file either a discovery motion, which, again, we're not going to file, or a motion for summary judgment. And then they'd file a motion in limine. That would not be a use. But instead what they've done is they've said on the pleadings and declarations, only because we've put them in the case because we were concerned about this possibility, really, because normally we could have waited and filed the declarations later. Just on the pleadings, they've said the whole religion aspect of the case, the first eight counts, have to be gone. That's not just a result of the exclusion of the evidence. So this is very different from a case, like most state secrets cases, where the plaintiffs need the information in order to proceed. This is a case where we have all the evidence that we need on these religion claims just based on our own evidence, and yet they're still saying the religion claims cannot go forward. Can you explain the basis for the distinction that I understand you to have just made? Perhaps I didn't understand what you said, but what I thought you said was that invoking the state secret's privilege for the purpose of excluding evidence is a use, but invoking the privilege for the purpose of seeking dismissal is not a use. I mustn't have spoken. I'm very sorry, Your Honor. That's exactly backwards. So if they just invoke it to exclude the information? I'm sorry. All right. Backwards. What is the basis for drawing that distinction? It seems that if invoking the privilege is using the privilege, wouldn't you be using the privilege in both of those situations? Why in one and not in the other? I think it's using the privilege, but it's not using the information. Why is it not using the information? Well, I just think in normal discovery, normal privileges, all the privileges, and these are arguments that we agree with that they're in their brief. If I'm an attorney-client situation, and someone tries to get discovery, and we say, well, that information is privileged. We want to keep it out of the case. You don't say you're using the evidence, but if I then say, oh, because you have done that, now the underlying claim on which you sought discovery has to be dismissed, even though you say you don't need the evidence and you don't want it anymore, or actually, I mean, like, we never wanted it, but anyway, you know, you don't want it. Now you're doing something more than just keeping it out of the case. And that distinction is critical. So I read Professor Donahue's brief from Georgetown. And so that's very much in my mind. I thought it was a good brief. And I think she seems to know what she's talking about. So I'm thinking, look, the thing is that you don't want the case dismissed, of course. And Totten doesn't apply. And so they shouldn't have had anything to do with that. They should just look at Reynolds. That's right. All right. Now, give that's what these seems to be the issue and the problem. So do you really care whether the government's right or wrong on the displacement of the state secrets doctrine by 1806 or whatever? Suppose we said, no, it doesn't. But it doesn't matter that it doesn't. Because of course, as quoting the government, the judges will look at this information. And if the information it doesn't solve the problem, simply to say, we don't want the information, namely you, of course you don't. Because the government says, judge, look at this, you will see that we both can't introduce the information because it's just too secret, it's unbelievable harm if we do. And it proves beyond any doubt their case is wrong. What is the court supposed to do then? And there, I don't know. And we have Justice Scalia's opinion on that. And where I am at the moment is I don't know. But I don't have to decide that yet. And it might not be those situations that are the dilemma I just described until not only the district court under the proper standard, but also the Court of Appeals looks at this and sees if there's some special reason to dismiss the whole case or not. No automatic dismissal? No automatic no dismissal? I don't know. All right. There you are. That's where I am. Say anything you like. Thank you, Your Honor. Three thoughts I have about that. First, I just want to be clear on the very first point you made, why do we even care about FISA? We have two distinct paths, as we see it, to success in this court. The court could hold that the state secrets privilege does not authorize dismissals either at all outside of contracting cases or where the very subject matter is not secret. Or the narrower ground, which I think Your Honor had discussed with Mr. Kneedler, which is on the pleadings before any of the information has been looked at. And the district court looked at declarations, not at the underlying information. But Mr. Kneedler says that that way of resolving the case would not get to an affirmance. How would it get to an affirmance? I think it gets to an affirmance because at the very end of the Court of Appeals decision, the court says it's adopting this in the proceedings on remand. It says it's adopting the D.C. Circuit's rule from In re Field case that the government is essentially, then Judge Scalia's view in malaria, the valid defense rule. And you can't dismiss that on the pleadings. You've got to look at the information and see if the injustice that we're contemplating here actually would happen. Is it true that actually there was no bug in Mr. Pezaga's office when he was giving very, you know, intensive religious instruction to his congregants? Or maybe it was warranted, you know, meaning there was a warrant for it. And then if that's true, and so this would be worth a grave injustice on the government. Once we know that, if that's actually true, then you dismiss the case. That was what Judge, then Judge Scalia said in malaria. The decision below adopts that through its affirmance of In re Field case. And so that's why I think it would be an affirmance. This court could just say, we hold it was too early, send it back. And I suppose you could say FISA displaces it or you could not. Or excuse me, you could say FISA doesn't displace it. You could say we don't have to decide that. We vacate that and just send back the state secrets portion of the case. And that would be an affirmance because it would lead you to a very similar result, which is that just as Congress wanted, the court is looking at the evidence not just to decide if it should be secret, but if the government broke the law, if the surveillance was actually unlawful. And that I think is the critical reason why, because of that last part, it is an affirmance. Now, that being said, and I still want to come to the other parts of your question, Justice Breyer, we only have to win that it's a basis for an alternative basis for affirmance if it's not in the question presented, right? I mean, if it's in the question, because you can't determine if FISA displaces the state secrets privilege without knowing what the state secrets privilege does, then it seems to me that the court can address it that way as well. We said in our brief in opposition, in compliance with this court's rule, 15.2, we said we are going to argue that under general dynamics, there is no dismissal remedy available in this case. We also argued that in the court of appeals, a slightly different theory, but we preserved the claim. And then they replied in their reply on the merits. And they cited a long set of court of appeals cases that they said affirmed their rule. And now they've come and said, it's not in the question presented. I think it is in the question presented. And we also gave notice of that and they didn't say that it was not. So I do think it's an alternative basis by which an alternative path to victory. But just to go back then to the second part of your question and not to abandon in any way our arguments on FISA, I want to stress another part of our displacement argument, which has actually not been discussed thus far today. 1806s says, if the attorney general files a declaration that disclosure or an adversary hearing would harm national security, then it shall apply these ex parte in-camera procedures that we've been talking about to determine if the surveillance was lawfully authorized and conducted. Now that standard, the attorney general filed a declaration that disclosure would harm national security is almost identical to the standard in Reynolds that divulging the information could risk endangering national security. Substantively, the substantive rule is almost identical. And the result of their view is that the same attorney general declaration, because this declaration satisfies 1806s, it says disclosure of this information would reasonably endanger national security, attorney general declaration in our case, gives the government two options. They can move to dismiss under state secrets privilege, which is what they've done, or they can go through 1806s and give the information ex parte and in-camera to the court, even though the statute says these are the procedures that whenever these conditions are met. So that is a powerful displacement effect, not for the state secrets privilege in general, but for the state secrets privilege as applied to cases involving the domestic electronic surveillance of Americans. And that's all the issue in this case. It's just about giving the district court ex parte in-camera review, not disclosure to us, because the decision below says they can reassert the privilege if there's a disclosure to us. But just that aspect, the ex parte in-camera review for cases involving domestic electronic surveillance, on that aspect, 1806s occupies the field. It takes away any other options, including outright dismissal under what they say is the state secrets privilege. I guess what strikes me as wrong about that argument is that if you look at 1806 and you just take a step backward and you're not focusing on like, what does this word mean and what does that word mean? But if you just take a step backward, what 1806 is all about is deciding whether surveillance is legal. And according to 1806, that matters with respect to whether the government can use it in the standard way that illegal evidence can't be used in a proceeding. And for whatever reason, Congress thought it also mattered with respect to plaintiff. And that's a very different focus. Was this obtained illegally? Because we think that that question has something to do with whether it should be discoverable or whether it should be usable in court from the normal state secrets inquiry, which is illegal, legal, who cares? It's just dangerous for national security. Yes, Your Honor, I agree that both parts of that. I certainly agree that the purpose of it is to determine if it was lawfully authorized and conducted. And while I do think that's broader, if you'll permit a slight deviation, I think it's broader than what the individual defendants counsel has suggested. It's only about Fourth Amendment. It certainly incorporates First Amendment. And if I said it was very much about the First Amendment and in part the persecution of religious minorities, actually, so I think that it's broader than that. But I agree it's just about determining whether the surveillance was lawful in whatever context it may arise. And I also agree, Your Honor, that often in the pre-FISA practice, the only inquiry in the state secrets privilege analysis was whether or not the information should be secret. But there were also cases where the courts were not simply interested in whether or not it was secret. They were also interested in whether the Fourth Amendment was violated here. We have cited a few of those in our brief, Jabari v. Kelly. There's also a dissent in Halkin v. Helms from the Rehearing on Bank, where the judge makes this argument. So I don't think it's implausible that the Congress might have looked, seeing a backdrop of abuses identified in the Church Committee, surveillance of Vietnam War protesters, and MLK, and even a justice of this court, I believe, they would have said, we don't just want to know whether this is secret. We also want to know, did you break the law? I don't think it's that implausible to believe that they used the same substantive standard that said we want to bring the courts in to decide if the government was acting illegally. What is your answer to Ms. Carroll's argument about the rights of her clients? Suppose that in conducting this ex parte, in camera review, the judge says this was illegal because it was based on religion. Is that the end of the case for her clients? I don't think it's the end of the case. Well, then can they have a trial? On that question, I think if the court finds that, then you're not going to be able to give that same question to the jury. We acknowledge that. Well, isn't that a violation of their due process rights? So we have deliberately not said in our briefing whether we think that's true or not. Well, that's why I'm asking you now. How can that possibly be consistent with due process? I mean, that's the star chamber. A judge in camera ex parte, not only without the presence of the defendants, without the presence of their attorneys, determines that they violated the plaintiff's First Amendment rights. So I want to say, after I answer your question, why I think it's not a reason to consider the statute. But to answer your question directly, I think that the tricky issue for a court is that we're actually considering this constitutional question. We would have to first consider, what about the mirror image? Because obviously, the same exact thing that you have said is true of us. And if it's true that they've engaged in entirely lawful conduct, it sure sounds bad for the reasons Your Honor has said. But if they've engaged in unlawful conduct, and you're going to dismiss the claim without us having any opportunity to have a jury trial and all the rest of it in due process as well. And we have not been able to understand why it's any different. Well, do you think that everybody who is aggrieved and would like to bring suit has a due process right to bring that suit and recover? No, but this is a different situation. For both sides, we're hypothesizing, and this gets to my reasons for believing it's premature, we're hypothesizing we've beaten summary judgment, both sides, right? Both sides have beaten summary judgment. We've shown standing. There's no sovereign immunity problem, all the other doctrines, Iqbal, et cetera. And yet still, here we are. And in that situation, I think it's the mirror image problem. The other thing I would say- Well, it's not honestly how it can be a mirror image problem, because the due process rights of potential plaintiffs are not the same as the due process rights of potential defendants. But beyond that, if this is the result to which your argument leads, isn't that a powerful reason for interpreting this statutory language differently? Right. Thank you, Your Honor. So I think it's not, for two reasons. The main reason is because if you look at Section 1806G, which is the provision which authorizes relief in the case, once the district court has determined that the surveillance either was or was not lawfully authorized and conducted, it says you suppress the evidence or otherwise grant the motion in accordance with the requirements of law. And we read that to mean that if we have an 1806F process, whether on summary judgment or however it comes up, and then the court finds the surveillance is unlawful, they now have the right to say, at that point, this would violate the Seventh Amendment to bind us to that. And therefore, it would not be in accordance with the requirements of law, and then the issue can be litigated. And I should say, when I say the issue would be litigated, the Bivens litigation hasn't happened. The 1810, our 1810 claim in this case, which no one has moved to dismiss, although you heard Mr. Kneedler say they might move to dismiss it, but that claim still remains to be litigated. And the defendants may well be out of this case long before we get to the spot. Or if there really wasn't a warrant, and they were spying on Mr. Abdul-Rahim while he was leading his housemates in prayer without a warrant, then they might lose on summary judgment, and then the case will be gone. So I think it would be a mistake to construe the statute very narrowly and, on their view, basically destroy the ability to litigate 1810 claims because of this possibility, which is very, very unlikely to happen. What about this, the grant the motion in accordance with law language that you just mentioned? In accordance with law, does that include in accordance with the state secrets privilege? It actually does, Your Honor. On the relief side, it does. And that's consistent with the Ninth Circuit's holding as to what would happen. Well, actually, I'm sorry. The Ninth Circuit had, I think, two reasons. Let me step back a second. The Ninth Circuit said, we think the privilege is still available here, and we haven't required disclosure to the plaintiffs. And I think that is consistent with FISA, both 1806F, when we're going through the process of deciding whether or not the information was lawfully authorized or conducted, and on the relief side. It's consistent on the F part because the statute does not say that the district court shall disclose to the plaintiffs if needed to determine the lawfulness of surveillance. It you may disclose to the plaintiffs subject to security procedures and protective orders only if needed to determine the lawfulness of the surveillance. And what that means is that the government has the ability to argue in the extremely unlikely event, it's never happened, that it happened once and then it got reversed on appeal, that a district court ordered a disclosure when determining the legality of surveillance to the plaintiffs. In the extraordinarily unlikely event that that happens, the government will have the ability to come in and say, no, even with protective orders, even with whatever else you want to do with your SCIF or whatever it is, there is no way to protect national security to give this information to them. And that is, I think, the state secret's privilege. That's the same argument. And to kind of go back, like Justice Kagan was saying, the state secret's privilege says, lawfully or unlawfully obtained, we don't care because it would harm national security. So you're run through the gamut of 1806F and conclude, listen, this was unlawfully obtained, you're conceding that the state secret's privilege could kick in and still keep it out. At the release stage, so it doesn't, the main thing it does is, what FISA does is it brings the court into the picture where they can see the evidence. But when the portions of it that require disclosure to plaintiffs, that has may in it. And so that's why it's a, I think it's perfectly consistent with state secret's privilege at common law. But I just want to make sure clearly that I'm understanding, that I'm answering your question. You're looking like I'm not answering your question. I'm just trying to follow how this actually would play out. Yeah, sure. So you have to give the information to the court. And that's what Congress wanted. The courts get to find out if the government is breaking the law or not. But if you ever want to disclose to the plaintiffs to go beyond just the court and now go to us and to the public, now the government has the ability to argue that that's not permitted in the interest of national to get relief. Yes, in our, in our, yes. And in our... You would lose, like you couldn't. It was unlawfully obtained, but because it was protected by the state secret's privilege, you can't recover. No, well, I mean, I think that's possible in some cases. In our particular case, we said that the prayer for relief clearly says we want the evidence, the information unlawfully obtained to be destroyed or returned. That's what we said. So I think we have made a request to obtain, absolutely, because we said return. That's one of the things that we've asked for. But we said destroyed or returned. And that means that, I mean, what we would argue in the district court, if we ever got to the spot, was that, look, even if they say they can't show it to everyone, they still need to destroy it. And that would make a difference. I mean, then our clients would at least still know that the government, whatever records they got from them because, you know, Mr. Fazaga was leading his congregation in prayer or Mr. Malik decided as a young man to embrace his faith. They would at least know then that got burned because it wasn't right to spy on them because you thought that they were dangerous just because they were embracing their faith. And so it wouldn't be everything, you know, perhaps that we want, but it's well within the scope of the complaint. And it would also preserve the government's state secrets privilege. That being said, I feel all of us were so far ahead of it. All the court would have to decide now in either of the two paths is that FISA displaces the state secrets privilege when the government is seeking to use information as it is here. And you wouldn't even have to decide this question about requests to obtain. You could just decide they are using it. They're otherwise using it. And because of that, they can keep the information in their vault, but they can't win dismissal of our religion claims. We get our day in court on the religion claims or the court could decide it was premature to dismiss. I think it's just as Kagan perhaps was suggesting you could decide it's premature to dismiss state secrets Where does Article 2 fit into your analysis? Because Judge Bumate and then Judge Diaz on the Fourth Circuit both started with an Article 2 backdrop and the roots of the state secrets privilege and said in interpreting 1806 F, we take this as the better reading as a matter of text. But we also think this would be a very odd way for Congress to narrow, I guess, the state secrets privilege, which is so foundational to the national security of the country. So the bottom line answer, and I have lots of thoughts on the doctrine that they were discussing, but the bottom line answer is when we're not talking about an area of exclusive and conclusive executive power. Well, that's I'm going to stop you right there. Sorry. That's debatable. Right. And that's the you avoid deciding that question, which has a lot of ramifications. And I understand exactly what you're saying on the Jackson framework there. And we avoid deciding that by not interpreting the statute to trigger that question. So if we're on the same page on the standard, right, then I would say it's limited to the domestic electronic surveillance of US persons. And this court in Keith invited Congress to and also equally important, your honor, only ex parte in camera review. That second element is also important. If you look at Nixon, for example, look at the last footnote in Nixon's footnote 21 on page 716. What the court says is we expect the district court is now going to have to go through this is high level communications between the president and his advisors and excise the information that may be privileged under Nixon also, as you know, well, distinguished national security information. So that would not be that would be different, at least if it's presidential communications. And I think right. But respectfully, your honor, I'm making a narrow point. You're just about ex parte review. That footnote cites Reynolds. It doesn't decide it. It says we will have to the district court should and you should cooperate with government counsel to go through the information that may need to be excised under Reynolds. And so what I think that the court was imagining was the president's communication about national security with his high level advisors may not belong anywhere out in The New York Times or anywhere else. But the court can look at it to determine if and exclude it in the course of litigation, which is important to determine if the president broke the law. And that's all FISA did here. That's why I think that the scope of the displacement here is very narrow. It's just limited to ex parte in camera review by courts. And that's why I think there's not even a serious Article two question here. I mean, all that explanation, which is helpful. One other question, which is, are you seeking to narrow Totten on your state secrets argument? Are you taking it as written? We take it exactly as General Dynamics described it. Okay. And are you also as tenant described it? Yes, your honor. And I know you had asked. I can't remember. It's I think it's Mr. Needler. The about the passage in Totten, where they say, look, judicial, I can't remember the exact language, but something like review of any matter that could give rise to the divulging of secret information, you know, that passage. And I would just point to the fact this is the same passage is picked up in tenant and that the government relies on to say, it's broad. The very next paragraph there, the court says, as I'm talking about Totten now, as a general matter, we can say that suits about matters which are inherently secret cannot be maintained. And what they cite is marital communication, attorney client communication, all of these things, regular privilege law. That part of the case is actually not resting on a national security rationale. It's just saying, look, if I want to sue my wife over a promise that she made in the kitchen or something, you know, that's going to be that's going to be barred. And the court can figure that out very early. You don't need to wait for discovery to figure out that obviously that suit is barred. To pick up Justice Breyer's question earlier, though, it doesn't seem like we need to get into that if we conclude if we agree with the government. I know you don't want us to, but if we agree with the government on the 1806 F issue and send it back to the Ninth Circuit, as Justice Breyer and Justice Kagan described and I mentioned earlier, all these kinds of issues can be fleshed out and come back to us where that's the central focus of the case. I feel like we're doing a drive by in this case on a massively important issue if we get into that. Yeah, I agree, Your Honor, that the narrowest ruling in our favor, probably in the whole case. Yeah. I mean, I think the otherwise used maybe I'm the only one or maybe not. I don't know. But I think I think otherwise used is very plausible as a ground of statutory interpretation for FISA. And you don't need to get into the question, Justice Sotomayor, you had asked about whether plaintiffs can use it in discovery if you find the government is using it here. But the narrowest ground, perhaps even narrower than that, would be to say it was wrong to dismiss on the pleadings in this case. We know the very subject matter of this case is not a state secret. The government said this person worked for them. They said they the majority of the audio and video will be available for the litigation below. And the district court still dismissed the whole thing without ever looking to see whether. I'm sorry to interrupt. The Ninth Circuit hasn't really passed on that. Why would we pass on it before the Ninth Circuit did? That would seem out of order to me. Well, yes, I it's true. Our argument that the dismissal was premature. That was our primary argument. I guess the issue is that I read their brief. Perhaps you can ask them. But I read their brief to be arguing for an affirmance going underneath an affirmance of the district court order. And you cannot affirm the district court order. But maybe that's wrong. Maybe that's not what they're saying. I guess I heard a little different from Mr. Kneedler, but he can get back into that on rebuttal. Yes, but but but I think the court could also say we disagree on FISA, but we want you, Court of Appeals, to address the prematurity argument. And state secrets is nowhere here. I think I would I would say if your honor is fine, that the question presented does not include state secrets at all, then that would also mean you shouldn't touch the valid defense issues that are in the that are in the case as well. I'd like your help with a related problem. And that is, you know, asking this question that we're struggling with about 1806, this consistency with state secrets, you know, raises a question what state secrets is. And in 1978, when the church committee issued after church committee issued its report and Congress adopted FISA, Reynolds was on the books, and that was pretty much it. And Totten was over there having to do with spy contracts with spies. And so so the state secrets doctrine pretty clearly meant you exclude the evidence and the It's only since then in relatively recent times that the government has asserted the Totten Bar really kicks in in a lot of cases and that lower courts have run with that ball. So asking what the state secrets means today and whether that implicates FISA seems to be a different question. Yes, I completely agree, your honor. I would note that in their long string side footnote in their reply brief where they say here's all the Court of Appeals cases, and leaving aside that most of those cases are about where the plaintiffs can't make their case. But even leaving that aside, the string side ends before 1978. It ends around 1980. I think there's even in all of the cases that they've cited, they don't prove that dismissal was a contemplated remedy under state secrets outside the government contracting context in 1978. And I think it's quite clear that actually in 1978, there's lots of state secret cases. These are in Professor Donohue's brief, among other places. And actually, several of them are in ours as well. But it's very clear that that prior rule, the evidence was excluded and the case goes on without it. I mean, we cite cases from England from the early 1800s, Y. B. Gore. I'm sorry to interrupt, but I do want to interrupt because I think my real problem and what I'm hoping for an answer for, we're in tremendous agreement on this point. But what I'm struggling with is the case was asked does despise or displace state secrets doctrine. And if this court hasn't definitively answered what the state secrets doctrine is, that's hard. And if Congress had in mind one version of the state secrets doctrine, is that one that's relevant that we should be asking about? Or do we ask something other questions? I mean, that's what I need your I see. I see. I haven't thought to be perfectly honest about whether the question presented is incorporating today's understanding versus that one. I think when you're looking at what Congress contemplated, I can answer that part of the question for you. Congress, obviously, in 1978, is thinking about state secrets doctrine in 1978. And so the fact that they are saying, oh, look, FISA is not displaced. And yes, allow us to dismiss claims. That doesn't make any sense. Because if you're going to say, okay, freeze the world and operate as it existed in 1978, then you can't be giving them a dismissal remedy. I don't know that satisfactorily answers your question. But yeah, that's my view on that subject. I also think that if the court thinks that the state secrets question is not within the question presented, if that's the court's view, but the district court can proceed on the state secrets question. I'm not sure there's a rationale for answering either one, to be perfectly honest with you. But yeah, that's my view on that. What happens in your view in this situation? The plaintiff claims that electronic surveillance was conducted for discriminatory reasons in violation of the plaintiff's right to the free exercise of religion, makes that a prima facie case. That's not that hard to do in an employment case. The evidence obtained through the electronic surveillance shows without any doubt that in fact the surveillance was not based on the plaintiff's religion. It was based on the fact that there was evidence that the plaintiff is a terrorist. What happens in that situation? And the latter is covered by state secrets. And the government says this can't be, this is too sensitive to be disclosed. What happens there? Yeah, I think there's two options. Under the decision below, which adopts the D.C. Circuit's view, which sort of based on the malaria decision that we discussed earlier, then Judge Scalia's view, the court can look at that information, find the exact finding that you just made, and then rule for the defendants. That's one view. The common law view is different. The common law is that privilege sometimes hurts one side, sometimes hurts the other side. It often leaves evidence out that probably would have resulted in a victory. You let the chips fall where they may. And the decision below did not adopt that rule. It adopted the rule from the D.C. Circuit. I think those are the two possible options. What is not acceptable in our view is to say even if the evidence may show the opposite, it may show it was blatant religious discrimination, said simply on Muslims. That's what he was told. The FBI told him to surveil simply on Muslims. That nonetheless, he would still win dismissal because hypothetically, they could have a full and effective defense. That's the Fourth Circuit view. It's the view that's pressed by the other side. And that we would strongly object to, Your Honor. Thank you, counsel. 1806F, the provision we're talking about, takes up the whole page of 207A, and yet it consists of two sentences. The sentence we've been talking about is 20 lines, and squirreled away in there are these few words that you're relying on for displacement of the state secrets privilege, for a reading of FISA that has enormous consequences for state secrets, for national security. And I just wonder, why would Congress put such significant language stuck in this provision? Isn't that an oblique way to have the consequences you're ascribing to that language? The jargon, in our opinions, as you know, is this is, you know, bearing an elephant in a mouse hole, which is a little overused. But what's the answer to that? So, I favor short declarative sentences. But, you know, leaving that aside, I disagree with their claim that FISA as a whole is hiding anything in a mouse hole. It's passed in the wake of extensive abuses that were uncovered by the Church Committee. And this provision, it says, if the Attorney General, you know, perhaps it should have been written in a sentence or in its own section. I would have probably put it in three sections, I think, if you think of it. But it clearly says that if the Attorney General finds that disclosure of the information or an adversarial hearing would harm national security, then you adopt the ex parte and camera review process and determine if the surveillance was lawful. I think this is a statute about domestic electronic surveillance. The whole thing creates the Foreign Intelligence Surveillance Court. It does all these things, as Your Honor obviously knows. I just don't see this as a secret privilege in other contexts not related to electronic surveillance. I think there'd be a better argument that it doesn't make any sense that they did this here. But the displacement is only in the sense that it creates all the procedures, the exclusive procedures, for how you litigate cases about surveillance. But I think your argument really does hinge on the or other materials language. Everything else is consistent with Mr. Kneebler's point that this is not affording a vehicle for what the court below did. No, Your Honor. I would say there's two parts that really contradict that view. One is the plain language, any motion or request under any other statute or rule, which they really have to add words into and say any motion about admissibility or in response to. They're having to cram narrowing construction onto this very broad text. The second point, and I think this is something Justice Sotomayor said right early on, is on their view, and I think Mr. Kneebler agreed with this, they can just dismiss 1810 claims. They can just win dismissal of 1810 claims on the state secrets privilege. So Justice Alito had asked about structural considerations earlier. I mean, the structural argument in our favor is extraordinarily strong. I mean, on their view, every 1810 claim they can just pick, and the ones they want to dismiss on state secrets, they can dismiss it using the same attorney general declaration that is described in 1806 F. So I think those are our two arguments, strongest arguments for why that part, the request to obtain part of the case, part of our argument goes for us. Obviously, the use argument is different, right? If we went on that, then we don't have to get into this. Thank you. Justice Thomas? Yes, a technical argument about the use provision. The use provision requires the government to give notice that it is going to use the information. And that makes sense when the government wants to introduce it at trial, so it gives notice that it's going to use it at trial and that allows the other party to move to suppress the evidence. But what sense does it make to require prior notice when what the government is going to do is to invoke the state secrets privilege? You just invoked the state secrets privilege where you have to send a notice that says we intend to invoke the state secrets privilege, and now we invoke the state secrets privilege. Does that make any sense? I think it does. And in this case, it served a useful function. They filed a notice of motion, and then they filed the motion. And we said, as a preliminary matter, before even briefing it, we tried to make some of these Totten v. Reynolds kinds of arguments to the district court. And we said, don't even look at the information. First decide as a threshold matter whether or not the state secrets doctrine can apply here. And we said, it may be a necessary evil that you'll have to look at the ex parte information, but if you can avoid doing that, that would be better. We said it's presumptively unconstitutional. So it served a very important function. We lost, obviously, that argument. But I think it served a very important function here. And yeah, I do think it's important for that reason. One other question. Under 1806, do you think that the judge must be able to look at all of the evidence to the extent it's necessary to decide whether the surveillance was lawful? Applications, orders, and such other I don't know what the scope of such other materials is. The Court of Appeals predicted, it didn't decide, it predicted that the scope of evidence that would be reviewable to determine whether the clearly electronic surveillance for FISA purposes, like him leaving recording devices in a prayer hall and walking away, to decide if that was discriminatory on the basis of religion would be the same information that you would need to decide if, say, his consensual conversations were also in violation of the Free Exercise Clause. But the court said, if that's wrong, then that's fine. Then the district court can say it's wrong, and then it can separate, it can apply normal safety standards. What I'm interested in is this. In cases involving the state secrets privilege, isn't it true that the court does not necessarily look at all of the evidence? There are situations in which the evidence is too sensitive. Think of the most secret evidence that the government possesses. Yet 1806 seems to say that the court reviews ex parte in camera. The evidence, that evidence, if it's, if it has a bearing on whether the surveillance was lawfully conducted. So our position would be that FISA brings the courts into the process. And so, you know, the government can always choose not to rely on some piece of information. It doesn't even want to give it to a court because it's worried the court might leak the information. And they can choose to do that. But if they, if they want to use it to show that the surveillance was lawful, they have to give it to the court as long as it's within that such other materials relating to surveillance. But that's what I, that's what we think. I'm not sure the court has to address that question here. Obviously it's again, quite premature. And I think that the court could hold that, you know, if this were like nuclear weapons in Hawaii or one of these other things, I don't know how this would happen in this case is 15 years old. But, but, you know, I think the court could say, we're not deciding whether there might be, you know, some set of information. Maybe it's because that part is in the constitutional core. If somehow the president were involved in our case, which seems quite implausible to me, but, you know, and say, well, you know, we're not deciding that a little part of it, but in general FISA displaces the privilege. And what it says is that other such materials relating to the surveillance have to be turned over to the court, not to us, but to the court. Wouldn't that be quite something because just dealing with some super secret information in district court, in district courthouses around the country would create an incredible security problem. Most of it, most district courts don't have the facilities to deal with information of that sensitivity. Well, I, we're only talking about domestic electronic surveillance of Americans. It doesn't arise. The claims don't arise if we're talking about things like, for example, what you, the, this court was dealing with, you know, last month, um, in a different state secrets case. Uh, so we're only talking about that. And obviously in criminal cases, uh, Justice Alito already courts all the time are doing FISA, uh, ex parte and camera review with the government is trying to use the information in criminal cases. So only if the government chooses that it wants to use the information. Yes, that's true, Your Honor. I, I, our view is that Congress thought in this context, given the history of abuse that had happened in this particular area, it was important to interpose the courts to play their role, to ensure that surveillance remained within the confines of the law. This is so your counsel, you disclaim wanting to use this information. The government hasn't made a motion to use it. It made a motion to dismiss. You can see that whether or not that motion to dismiss is appropriate under Reynolds and general dynamics and all that case law shouldn't be addressed by us. Correct? Um, no, Your Honor. I, I believe it's within the question presented and the court has the authority and we did argue it below. We said, put it in the BIOs, our position. You agree that it hasn't been properly briefed before us. Uh, and the ninth circuit didn't look at that. No, the ninth circuit didn't look at that because on bank six, five in the Jeppesen decision, it ruled that Totten and Reynolds were on a continuum. This was before general dynamics. Right. So, so it hasn't been really assessed by them. Not the way you've argued it before. Uh, no, Your Honor. It was foreclosed under civil precedent. So we didn't make this exact, this argument there. So if you were to lose, and I know you desperately don't want to, but assume my, um, assumption that all we hold is that no one's invoked 1806 here and we send it back for the court below to decide how state secrets interacts with a motion to dismiss. Is that the narrowest ruling that we could issue? Uh, yes, Your Honor. I think, uh, uh, holding that, um, either as I had discussed with Justice Kavanaugh, either, uh, that you shouldn't have dismissed on the pleadings, um, or that we want the ninth circuit to decide if you should have dismissed on the pleadings. Um, I would just, uh, point, just note, I guess, that the on bank ninth circuit foreclosed our argument about, uh, uh, the scope of the Reynolds, uh, privilege here. It was before general dynamics. So perhaps we could argue, Hey, look, exactly. So when we tell them, look at your folding in light of general dynamics. Yes, Your Honor. They should do that anyway. Yes, Your Honor. Yes, Your Honor. That would be the narrowest. Thank you. Justice Kagan. So this question doesn't assume you lose. Um, suppose, uh, you know, just on this question of the relationship between the two questions, um, suppose that the easiest question in this case, I think, is, um, the question of when dismissal is appropriate and that the ninth circuit decision was in some important way premised on an incorrect understanding of when dismissal is appropriate in a state secrets case. Um, uh, and suppose too that I find the 1806 questions quite difficult. And if the entire discussion of the ninth circuit was premised on this error about state secrets dismissals, one wouldn't have to get into that. That would seem an attractive solution to me, but that leaves an opinion on the books, which may well be wrong, that the ninth circuit, uh, view of 1806 in fact is incorrect. So what should I do? Um, I think the court could affirm on the alternative ground. Um, but I would still leave the ninth circuit opinion on the books, I guess, is your, um, your point, Your Honor. Um, I guess I, I suppose the court could say under these circumstances where our first argument to the ninth circuit was the dismissal was premature. Perhaps the court should say, uh, uh, we think that the court should have addressed that question first. Um, and for that reason, we vacate the, the decision and ask the court to, um, to address that, that question first. Um, I'm not sure, uh, I mean, under that you, you wouldn't say, uh, whether it was right or what was wrong. You were saying that under these circumstances, given the significance of the issues or, um, you know, for whatever other reasons, we think it more appropriate to address the question, whether the dismissal here was premature. The district court did not, uh, look at the actual underlying evidence that the district court didn't explain why, when we said we would move on our summary for summary judgment on the religion claims, didn't say why that would still somehow lead to inevitably the disclosure of information. Um, you know, unless, unless they, they carried the risk and it was, it was them that, that caused the risk. So I suppose you, Your Honor could, um, could take that approach. Um, I feel like your question sort of did assume we would lose on FISA in the end. Um, but you know, I mean, our, our view is that, um, uh, the court could also affirm on either of those two grounds, but I guess Your Honor already knew that. Um, and I, have I answered your question? I sense. Yeah. Justice Gorsuch. I just want to make sure I understand your answer to the question. Um, so, uh, it might be possible. I, I think you're saying to, uh, vacate and remand the case and say it was premature for the ninth to determine that FISA displaced state secrets without first asking what state secrets is and how it applies to this case. Yes, Your Honor. And we would say as Justice Sotomayor had suggested, um, particularly in light of general dynamics. Um, and, and there's two, if I, if I'm, if I may, Your Honor, there's two aspects to that. One is, uh, whether dismissal is available in light of general dynamics and the other is the prematurity part, whether you can do it on the pleadings or not. Thank you. Justice Kavanaugh. One follow up on the article two discussion we were having earlier. Appreciate your answers on that just so I'm clear and about what I'm suggesting. I agree with you. There'd be real doubts about whether the executive's power article two power to conduct domestic surveillance would be exclusive and preclusive under category three of the Jackson framework. So I, I agree that would be, um, doubtful in my view. Um, although we haven't said that, but at a minimum, I think the government is saying in this separation of powers back and forth between the executive and Congress, what the executive is do is that Congress speak clearly directly. You have some, um, clear indication of an intent to, um, intrude on the state secrets privilege than we have here in the chief justices questions about a few words and justice Alito's questions, which I would certainly second that district court that this kind of information, depending on what it is, it's not the kind of information you want floating around, even in the white house to people, much less floating around the country, depending on what it is, of course. Um, so on that question, that article two influences the readings, kind of. I think there are other statutes that have already crossed this bridge for exemption one, um, and the post EPA V mink, uh, uh, congressional action on that is one SIPA, uh, even FISA other provisions of FISA, which require very, uh, extremely sensitive programs that the government is running to be disclosed to this court. Uh, so, um, in that sense, I, I don't think there's a, when we're talking about domestic electronic surveillance and only ex parte review and all that, that's sort of the answer I'd give before. The one other thing I would say on it, your honor is, um, we're talking here about rules for litigation and all of this is about when they file something in court and all of that. And it's very well recognized that, uh, Congress has the power to set up a set of rules for litigation, whether it be evidentiary rules or other related procedures, advanced feature office, um, you know, talks about this, even in a context where there may not be power over the original, um, I think in there it's a denaturalization context. When you then talk about making the evidentiary rules, uh, Congress's power is even heightened. So here we're not talking about whether the government has the power in the first place to do something. We're talking about where they've already done it. And now we're setting remedies up, uh, 1806 S and 1810, uh, our mechanisms. And even if you believe them that it's about government's use, the whole thing is about what happens in court. And so I think they're also, uh, we're far afield from what I would think of as potential core article two concerns. I do have a question. It's a follow up to something justice Alito asked you earlier. He said deposit, you know, you have religion claims in the suit and the suit is about whether the surveillance violated or discriminated on the basis of religion, but review of the, um, application and related documents shows that there was no religious discrimination. It was based on, you know, very good evidence that the targets were terrorists. You said in that circumstance, like, okay, well then they've asserted the state secret's privilege. Let the chips fall where they may, but dismissal is not an appropriate remedy under the state secret privilege. Did I misunderstand that? Uh, yes, you're right. So there's two options. What you just described is the traditional common law rule. And it was the rule, certainly in 1978, you mean that it proceeds forward just without the, without the question is then what happens to the individual defendants? Let's say that the evidence that they can use to defend themselves against the claim that they were religiously discriminated is in this body of evidence that's protected by the state secrets doctrine. And you're saying dismissal is not a remedy. So they just go in with their hands tied behind their back and they just are sitting ducks. Yeah. So, so two thoughts, your honor under common law, that is certainly the result. Under common law, if you have a privilege like attorney client and then it's exclusively a common law privilege, it can be pierced if it would violate the due process rights, right? But if, if the state secret's privilege is not entirely common law, if it has a constitutional element, I'm not sure that the due process rights of the defendants could pierce it. Yes. I'm, I'm, I'm just thinking of common law cases, uh, that are actually cited in professor Donahue's brief. Republic of China is one Northrop McDonnell Douglas where the so, so can that happen if there's a constitutional element to the privilege? So, um, I mean, if we're talking about article two, um, no, but you're asking about it. Well, I'm asking like chips forward. I may, and you're, you're saying that that's fine, even if it violates the due process rights of the individual defendants. Well, I think, so again, there's another option. I want to make sure I get to talk about the other option, right? Which is justice Scalia or then judge Scalia's option. But, uh, but yes, I think it's often going to be true. I mean, if, if the due process clause requires that someone needs the common law, um, that, that just seems, so that assumes that the safe secrets privilege is only common law. Um, yes, but if, Oh, you're asking what if you have a conflict between the due process clause and the article two element of the safe secrets privilege? Um, I don't, I, I don't know. Um, uh, I think, uh, you know, again, whatever the answer is, it would be within the scope of the statute because in accordance with the requirements of law, it's hard to feel in the chips fall where they may, if it's then the individual defendants who are deprived of the information that they need to defend themselves against the claim that they discriminated on the basis of religion. When let's imagine injustice leaders, hypothetical, it's utterly clear from all the materials that there wasn't a religious discrimination. Yes. So, um, uh, again, I still want to talk about the other option, but the last thing I'll say before I do that is, um, and this is discussed to some extent in tenants and cases like that, the government can always indemnify. And I mean that when we're talking about people who are working for the government, which is typically what's going to happen in an 1810 case. Um, if you're talking about the mirror image problem, do you let the harm of the due process problem you're talking about or the seventh amendment problem you're talking about fall on this side of the ledger or on our side of the ledger? You know, we're out of luck, even if they blatantly broke the law, they have the possibility. Justice Alito pointed out are not the same for defendants and plaintiffs. Yeah. The seventh amendment rights are certainly the same. Um, but let me get to that. Let me get to the other, uh, the other point. I mean, uh, then judge Scalia and actually building even on a prior case Ellsberg, um, said that the court is, and this has become an in resealed case, the DC circuits rule. And it is the rule adopted by the decision below in this case is that in that situation, the court can look at the information as justice Alito had imagined, uh, decide that, yes, there is no basis for finding that, uh, these people were discriminated against and rule for the defendants. And, uh, and that actually is what happened in malaria where the person had a claim that they thought a first amendment claim that they thought, uh, the, the court held that should survive, um, uh, summary judgment, but they said, but we've seen the evidence and we know that claim is wrong. And so they, uh, nonetheless rule for the defendant. And I think that option would certainly be available under the court of appeals decision in this case. So I think if you affirmed that option available to them, yes, we haven't challenged it. We haven't challenged it here. Um, uh, and, but you know, the very last thing I would say about that is our clients, they may have had real targets, but the instructions that the informant says he got and what he did was he went all over the place. And I mean, I'm not talking just about the facts of your case, obviously, because how we interpret the statute or what we might say or not say about state secrets privilege has ramifications beyond your case. Understood your honor. Thank you. Counsel. Thank you. Counsel rebuttal, Mr. Needler. Thank you, Mr. Chief justice. Uh, several points. First of all, we think it makes sense. The proper disposition of the case is to review what the ninth circuit did decide, not what it did not decide. The ninth circuit did not decide whether, uh, the district court's dismissal of the only the first amendment claim, uh, was proper on the basis of the state secrets privilege because it said the state's per privilege, what state secrets privilege was displaced, uh, by five states. And there's no doubt the privilege existed clearly under Reynolds at the time that, uh, Pfizer was enacted. So there is certainly no reason to think that Pfizer displaced that well established, um, privilege. Uh, the question of what the consequence of that privilege is not the privilege itself. It's what happens if the privilege is validly asserted and the evidence is removed from the case. So I think, uh, justice Gorsuch, the question is, uh, what Congress would have thought about the state secrets privilege itself, not the consequences of a successful assertion of it. And as to whether 1806 F displaces the state secrets privilege, I think for a number of reasons, it clearly does not. For example, it provides for the attorney general to And true Pfizer was enacted to address abuses of domestic surveillance, but other provisions of Pfizer addressed that with the, with the FISC and the applications for approvals. But what, what Congress did in 1806 F and related provisions was to codify and statute a procedure that had been developed at common law or by courts for the suppression of evidence that was, uh, that was, uh, obtained by electronic surveillance. And that would arise only if the attorney general decided to put forward the evidence as justice Alito described. And there are many other things that make that clear. Subsection F refers to two types of motions, a motion to suppress or a motion to obtain discovery, uh, uh, of either the application in order or the materials or the when it says that the court grants that motion, it doesn't say grant judgment. It says grant the order to suppress or otherwise grant the motion, which means the motion to exclude the evidence may be suppressed, or it may be something less than suppressed, something more than suppressed. So it's all wrapped up in the, in, in the procedures for suppression on the question of dismissal. We think that, that it is artificial to separate Totten from Reynolds. Reynolds, um, Reynolds itself had a footnote about Totten, uh, after discusses, uh, the fact that national security information can be excluded. It says, see Totten. And then it, it describes Totten as a case where the, um, the case was, was not permitted to go forward even at the pleading stage, because it was obvious from the face of the pleadings that the, uh, that the case could not go forward because it concerned, um, a state, a state secret. But there are other situations in which the, it is central to the case, a state secret, such as here, they allege that, uh, plaintiffs, uh, the defendants violated the first amendment rights, but the evidence, uh, might well furnish a basis for defending against that. That is central to the case in the same way that the contract in, uh, in Totten and in Tenet, uh, was central to the case. And general dynamics, in fact, contains a number of passages that are helpful, supportive of the idea that dismissal can be an appropriate remedy. For example, um, respondents say that as plaintiffs, they're happy to make their case and then let the chips fall where they may, putting to one side the threat of blackmail, graymail against the government in that sort of situation, forcing it to settle or maybe, maybe even accept an injunction against us, uh, against it. Uh, but, uh, general dynamics says, uh, it seems to be unrealistic to separate, as the Court of Federal Claims did, the claims from the defense and to allow the former to proceed while the latter is or lack of justification for judicial relief. The point is, if the, if the issue cannot be fairly, soundly, safely adjudicated without risking risk, uh, disclosure of national security, uh, information, then it can be, it can and should be dismissed whether this arises by the government's assertion of a defense and rebuttal. It's not even an affirmative defense. It is a defense, a factual defense, or whether it goes to the plaintiff's, uh, to the plaintiff's case. Uh, and in, in fact, in general dynamics, um, well, I think it's in Tennant v. Doe, the Court also relies on Weinberger where the case was dismissed because the defense could not be properly, uh, asserted due to state secrets information. Thank you, Mr. Kneedler. Counsel, the case is submitted.